**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

THE TRUSTEES OF THE PLUMBERS AND :
PIPEFITTERS NATIONAL PENSION FUND, :
103 Oronoco Street :
Alexandria, Virginia, 22314, :
:
      Plaintiffs, :
:
v. :
: Civil Action No. _____
DIXIE PLUMBING, INC., :
115 Juno St. :
Jupiter, Florida 33458, :
:
  Serve: :
  Registered Agent :
  Stephen L. Oldham, :
  115 W. Juno St. :
  Jupiter, Florida 33458, :
:
      Defendant. :
:

**COMPLAINT**

(TO COLLECT WITHDRAWAL LIABILITY
DUE PLAINTIFF FUND)

**PARTIES**

    1.    Plaintiffs Trustees of the Plumbers and Pipefitters National Pension Fund (hereinafter the "Fund") are the trustees of a multiemployer employee defined benefit pension plan as those terms are defined in 29 U.S.C. §§ 1002(2), (3) and (37), and 1301(a)(3). The Fund is established and maintained pursuant to a Restated Agreement and Declaration of Trust and to collective bargaining agreements between affiliated local unions of the United Association of

Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("United Association") and employers including but not limited to the Collective Bargaining Agreement between United Association Local 630 and Dixie Plumbing, Inc. The Fund is administered at 103 Oronoco Street, Alexandria, Virginia 22314.

2. Defendant Dixie Plumbing, Inc. (hereinafter "Dixie" or the "Company") is a corporation existing under Florida law with an office located in Jupiter, Florida. Dixie transacts or transacted business in the State of Florida as a contractor or subcontractor in the plumbing and pipefitting industry and at all times herein was an "employer in an industry affecting commerce" as defined in 29 U.S.C. §§ 142(1), (3) and 152(2); 29 U.S.C. §§ 1002(5), (9), (11), (12) and (14); and 29 U.S.C. § 1001a.

**JURISDICTION**

3. This Court has jurisdiction over this action under 29 U.S.C. §§ 1132, 1145 and 1451 because this is an action to collect withdrawal liability payments due to an employee benefit plan under the terms of the plan and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Court also has jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

**VENUE**

4. Venue is proper in this district pursuant to 29 U.S.C. §§ 1132(e)(2) and 1451(d) because the Fund is administered in this district.

**FACTS**

5. Beginning in or around 1998, Dixie was obligated to contribute, and did contribute, to the Fund on behalf of its employees pursuant to successive collective bargaining agreements between Local Union No. 630 of the United Association ("Local 630") and the PAC Industry Fund

(hereinafter referred to collectively as "Collective Bargaining Agreement"). The Collective Bargaining Agreement established the terms and conditions of employment for Dixie's employees who are or were engaged in commercial and residential plumbing, pipe fitting, and refrigeration work.

6. Pursuant to the Collective Bargaining Agreement, Dixie agreed to pay to the Fund certain sums of money for each hour worked by its employees that were covered by the Collective Bargaining Agreement. Dixie also agreed, pursuant to the Collective Bargaining Agreement, to be bound by the Fund's Restated Agreement and Declaration of Trust (hereinafter, "Trust Agreement") and the Full Text of the Plan Rules (hereinafter, the "Plan").

7. Dixie's obligation to contribute to the Fund terminated November 1, 2014.

8. In May 2015, the Fund became aware that Dixie was performing work in the jurisdiction of Local 630 of the type for which it had previously been obligated to contribute to the Fund under the Collective Bargaining Agreement. Such work occurred within five years after the date on which the Company's obligation to contribute to the Fund ceased, and it has not signed a new Collective Bargaining Agreement with Local 630 or otherwise renewed its obligation to contribute to the Fund. Therefore, the Company has experienced a complete withdrawal from the Fund within the meaning of 29 U.S.C. § 1383(b).

9. On May 19, 2015, the Fund sent a letter to Dixie's President and Registered Agent, Stephen Oldham, notifying him of the Fund's determination that Dixie experienced a withdrawal and, as a result, was subject to withdrawal liability in the lump sum amount of $66,610.00. The letter provided an amortization schedule comprised of forty-six (46) monthly payments of $1,581.00 each and one final payment of $1,531.00. It stated the first payment was due on July 1, 2015 and, thereafter, payments were due on the first day of each month.

10. The letter was received by Dixie on June 30, 2015 according to tracking information from the United States Postal Service.

11. By letter dated September 17, 2015, the Fund, by and through counsel, notified Dixie that its assessed liability was reduced to a lump sum amount of $61,860.00 by reason of a change in law.  The letter included a revised amortization schedule comprised of forty-three (43) monthly payments of $1,581.00 each and one final payment of $345.  In addition, the letter asked Dixie to make payment for its then-delinquent installments for the months of July, August, and September 2015.

12. On September 25, 2015, the Fund Office received a letter dated August 26, 2015 from Dixie, enclosing an undelivered July 28, 2015 request for review of the Fund's withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2)(A).  Dixie contested the assessment on the grounds that the Company's president was orally advised by a Local 630 agent in 2013 that the Company would not have an assessment of liability and that Dixie set up a payment plan for fees assessed by the Local in 2013.

13. By letter dated September 29, 2015, Fund counsel advised Dixie that the Fund's decision on review, in accordance with 29 U.S.C. § 1399(b)(2)(B), was to uphold its September 17, 2015 revised assessment.  In addition, the letter asked Dixie to become current in its continued delinquency.

14. Defendant did not initiate arbitration of the Fund's assessment within the sixty day period after receiving the Fund's response to request for review as set forth in 29 U.S.C. § 1401(a)(1) or at any other time, and more than 61 days passed since the expiration of the deadline for Dixie to initiate arbitration as set forth in 29 U.S.C. § 1401(a)(1).

15. Dixie failed to timely remit payment of its December 1, 2017 and January 1, 2018 installments.

16. On January 16, 2018, the Fund sent Dixie a notice of late payment regarding the December and January installments and demanding immediate payment of same, which Dixie received January 23, 2018.

17. Dixie made no payment in response to the January 16, 2018 demand letter.

18. On April 6, 2018, the Fund, by and through counsel, advised Dixie that the Company was in default of its withdrawal liability within the meaning of 29 U.S.C. § 1399(c)(5) and 29 C.F.R. § 4219.31(b). Accordingly, the Fund demanded immediate payment of Dixie's outstanding liability.

19. On April 23, 2018, the Fund received payment from Dixie for four months past-due installments.

20. By letter of April 24, 2018, Fund counsel informed Dixie that the Fund would allow the Company to resume making payments under its established payment schedule. The letter noted, however, that Dixie remained in default.

## COUNT I

### (To Collect Unpaid Withdrawal Liability Owed to the Fund)

21. Plaintiffs hereby restate and incorporate by reference the foregoing Paragraphs 1 through 20 as if fully set forth in this Count I.

22. Dixie failed to make its October 1, 2018 installment or any payment thereafter.

23. Defendant is, therefore, in default as that term is defined in 29 U.S.C. § 1399(c)(5) and 29 C.F.R. § 4219.31(b).

24. By letter dated December 10, 2018, the Fund, through counsel, demanded that Dixie make payment of its outstanding liability of $6,669.00 with interest. The letter was delivered December 14, 2018. To date, the Company has not made any payment of its outstanding liability.

25. Pursuant to 29 U.S.C. § 1451(b), any failure of an employer to make any withdrawal liability payment within the time prescribed by law shall be treated in the same manner as a delinquent contribution under 29 U.S.C. § 1145, and provides for a right of action to collect same.

26. Furthermore, 29 U.S.C. § 1132 provides for civil enforcement of ERISA's provisions, including 29 U.S.C. § 1145. Specifically, 29 U.S.C. § 1132(g)(2) provides that, in any action to enforce 29 U.S.C. § 1145 in which a judgment in favor of a plan is awarded, the court shall award the plan the unpaid contributions, interest on same, an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20 percent of the unpaid contributions, reasonable attorneys' fees and costs of the action, and such other legal and equitable relief as the court deems appropriate.

27. In addition, 29 U.S.C. § 1132(g)(2) provides that interest on unpaid contributions shall be determined using the rate provided in the plan, or, if none, the rate prescribed under 26 U.S.C. § 6621. Sections 12.05(c)(i) of the Plan provides that interest shall begin to accrue from the date the payment was due until the date paid, and Section 12.05(d)(ii) of the Plan further provides that:

> unpaid withdrawal liability payments shall be charged interest from the date the payment was due to the date it is paid at an annual rate equal to the prime rate charged by JP Morgan Chase & Co. [] on the first day of the calendar quarter preceding the due date of the payment. For each succeeding 12-month period that any amount in default remains unpaid, interest shall be charged on the unpaid balance (including accrued interest) at the prime rate in effect on the anniversary date of the date as of which the initial interest rate was determined.

28.     The first day of the calendar quarter preceding October 1, 2018 was September 1, 2018.  The prime rate charged by JP Morgan Chase & Co. on that date, as shown on http://www.jpmorganchase.com/corporate/About-JPMC/historical-prime-rate, was 5.00%.

29.     Section 12.05 of the Full Text of the Plan provides that,

> [i]n any suit by the Trustees to collect withdrawal liability, … if judgment is awarded in favor of the Plan, the Employer shall pay to the Plan, in addition to the unpaid liability and interest thereon as determined [as set forth in paragraph 27 above], liquidated damages equal to the greater of: (i) the amount of interest charged on the unpaid balance, or (ii) 20 percent of the unpaid amount awarded.

Plan Section 12.05(e).

30.     Defendant failed to make the installment due on October 1, 2018 under the payment schedule modified by Fund counsel's September 29, 2015 letter, and it was declared in default in April 2018.  Defendant is, therefore, in default and obligated to the Fund for its entire withdrawal liability assessment outstanding of $6,669.00.

31.     Pursuant to 29 U.S.C. § 1132(g)(2) and Plan Section 12.05(d)(ii), Defendant is also obligated to the Fund for interest on the unpaid withdrawal liability from the date due of the October 1, 2018 installment to the date of payment at the initial interest rate of 5.00%.

32.     Pursuant to 29 U.S.C. § 1132(g)(2) and Plan Section 12.05(e), Defendant is also obligated to the Fund in the amount of $1,333.80 in liquidated damages, which is 20% of the total outstanding withdrawal liability of $6,669.00 owed by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment on Count I against Defendant as follows:

A.      In the principal amount of $6,669.00, representing the total outstanding withdrawal liability due from Defendant;

7

B. In the amount of $1,333.80 for liquidated damages assessed on the principal amount set forth in Paragraph A;

C. For interest on the principal amount set forth in paragraph A assessed at a rate of 5.00% per annum from October 1, 2018, when the first payment that was not made was due, until the date of judgment;

D. For post-judgment interest pursuant to 28 U.S.C. § 1961;

F. For costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

G. For such further legal and equitable relief as the Court may deem appropriate.

Respectfully submitted,

Date: February 25, 2019

By: /s/ _____
John R. Harney (Va. Bar No. 41520)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue NW
Suite #800
Washington, D.C. 20015
(202) 362-0041 telephone
(202) 362-2640 facsimile
jharney@odonoghuelaw.com

By: /s/ _____
Jacob N. Szewczyk (Va. Bar No. 89617)
5301 Wisconsin Avenue NW
Suite #800
Washington, D.C. 20015
(202) 362-0041: Telephone
(202) 362-2640: Facsimile
jszewczyk@odonoghuelaw.com

*Attorneys for Plaintiffs*

320499_1

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Complaint has been served by certified mail, as required by 29 U.S.C. §§ 1132(h) and 1451(g), this 25th day of February, 2019 on the following:

The Office of Division Counsel
Associate Chief Counsel (TE/GE) CC:TEGE
Room 4300
1111 Constitution Avenue
Washington, DC 20224

Attention: Employee Plans

Secretary of Labor
200 Constitution Ave., N.W.
Washington, DC 20210

Attention: Assistant Solicitor for
Plan Benefits Security

Pension Benefit Guaranty Corporation
1201 K Street, NW
Washington, DC 20005-4026

Attention: MEPD Insurance Programs Department


By: /s/_____
John R. Harney (Va. Bar No. 41520)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, N.W.
Suite 800
Washington, D. C. 20015
(202) 362-0041 telephone
(202) 362-2640 facsimile
jharney@odonoghuelaw.com

*Attorneys for Plaintiffs*

320499_1